Mr. Wendell, hi, yes, good morning, may it please the court. My name is Raymond Wendell and I represent Plaintiff Appellant Anthony Ayala. I'll keep track of my time, but I'm going to try to save about three minutes for rebuttal. Mr. Ayala represents a certified class of truck drivers who worked for U.S. Express. The driver's pay was calculated by multiplying a designated mileage rate by estimated distance traveled. Drivers did not receive separate pay for non-driving work, such as long hours spent waiting at the facilities of U.S. X's customers to pick up or drop off cargo. As U.S. X informed them in a training video, when their wheels weren't turning, they weren't earning. Courts in California have long held that drivers who are paid on a per-mile basis must receive separate compensation at no less than the minimum wage for non-driving. Those cases include Cardenas versus- Counselor? Yes. Given the California Supreme Court's recent decision in Homon versus Delta Airlines, why shouldn't we focus on the contractual agreement of the parties, which the record seems to And your client's deposition testimony confirmed that the parties agreed that the piece rate pay based on the Rand McNally mileage covered the delivery of the load. That was the terms under which Mr. Ayala agreed to a tandem assignment with the other driver. So, first of all, Homon did not involve a piece rate pay plan. It didn't interpret Section 226.2. But it did say that the employer and the employee can agree to the scope of the work. And so it seems in this case, it seems to be pretty clear that the employer and employee agreed that the scope of the work was delivery of the load from point A to point B. Your salary might be measured or your earnings might be measured by the mile. But the job wasn't to take it a certain number of miles. The job was to take it from point A to point B. So doesn't Homon at least tell us that the employer and employee together can agree to the scope of the work? So, first of all, there was no finding of a contract here. And the district court erred by disregarding... Well, but your client testified that his understanding of the job that he was assigned was to take it from point A to point B. That was what he was being paid for. He wasn't being paid by the hour. He wasn't being paid by the hour. He was being paid by the piece of work. I Okay. So Mr. Ayala testified that he was paid a mileage rate. He testified that he didn't receive separate compensation for non-driving tasks. And he testified as to the many non-driving tasks that were required of him. Beyond that, what mileage paid covered or didn't cover is a legal question that he, I don't think, understood clearly. But he was not required to grasp the complexities of the labor code in order to enforce his rights under it. Well, but if the court tells us to look at the party's understanding of the agreement, there's no confusion as to what the parties agreed to, is there? The record is pretty clear on what basis he was going to be paid to deliver the load. So, in Justice Liu's concurrence in Oman, he cautions courts to be very careful about looking at the nature of the contract between the parties. And in a piece rate context, the promise that is relevant to the no borrowing inquiry under Oman is the employer's commitment to pay a price per piece. That is the moment of contract formation, where as an employee, an employee has to be able to understand how much they're actually going to be making. And at the moment when prospective drivers are offered employment with USX, they're offered employment at a mileage rate. USX's written policy that states mileage pay all of their work is just what Justice Liu in his Oman concurrence called clever accounting. So why do the amicus drivers take a different position? If you think it's clear that the agreement in this case wasn't, as your client said, that the load pay covered everything I got to do in order to get it there, or as the handbook says, the employer pays the drivers a designated mileage rate as compensation for completing a trip and delivering a load. You say that we should read the contract differently, but don't the amicus drivers read it exactly the same way? The amicus brief from the American Trucking Associations is not on behalf of drivers, it's on behalf of the employers. There's another amicus brief, isn't there? The legal aid at work amicus brief states that in a piece rate system, the promise that is relevant to the no borrowing inquiry is the employer's commitment to pay a price per piece. And it says that courts can't, it says that employers can't contract around the basic guarantees that section 226.2 provides, which is that all non-productive time must be separately compensated. And non-productive time is time during which the employee is actually generating pay. Explain to me how this works. And I know not all the members of the class operate on the team system, but how does this work on the team system in your view? We've got two drivers and they both decide who sleeps when and who doesn't sleep. And because they're being paid by the mile, they want to get there as quickly as they can, because that allows them to then move on to other jobs. Does one driver make more than the other for the task? Because do they make the same amount? How does it work? The drivers make, they earn a mileage rate for all of the miles driven by the truck. But then they also earn, they also earn in your view, not only the mileage rate for the miles driven, but some compensation for unproductive time, which let's make it sleeping. That's the easiest way to view it. So one driver sleeps for a quarter of the drive and the other one they make different amounts for that drive? No, they make the same amount. They just split it 50-50. Is that your answer? No, there's a total mileage for each trip. Right. And each driver makes- Do they split that? Oh, essentially they split it. Effectively they split it. Right. So would they also split the unproductive time? That's my question. So let's assume that their unproductive time is not equal because one sleeps more than the other. Are they paid different? Does the guy who sleeps more make more money for the trip? I think it depends on how- All right. So let me give you, let me give you a simple hypothetical. We have a 100-mile drive and they're being paid a dollar a mile. And I understand they split that $100 or they each get $100. That doesn't matter. And now the hours don't work for sleeping, but pretend they do. One of them sleeps for six hours of the trip and the other one sleeps for two hours of the trip. The guy who sleeps for two hours makes less money because he's got only two hours of unproductive time and the other guy has six. That's what I'm, that's what I'm trying to figure out how it would work. And then I have a variation on this hypothetical. Well, so I don't know that that current system that- Well, under the current system, nobody's paid for the unproductive time. So that's easy. I understand that's what you're trying to get them. You're trying to get them paid for the unproductive time. And I'm saying the result of that, it strikes me as the guy who works harder on the team trip makes less money than the guy who sleeps. Or am I mistaken? Actually, so under USX's current policy, the team drivers both make the mileage rate for- We agree. We agree. Well, then let me ask my hypothetical, which is a takeoff on Judge Hurwitz's. Suppose the driver is based in Illinois and the, I'll call him driver one, and driver two is based in California. Is that going to result in a difference in the pay for the Illinois driver versus the California driver, if we accept your argument? So our class is only California drivers? Potentially, yes. But don't Illinois drivers drive in California council? I mean, this is an interstate trucking company we're talking about. We did try to include a 50 state class, but the district court narrowed it to only California residents. Oh, only California residents. So you could have a situation then where an Illinois driver one is paid at a different rate than a California driver two for the time that the vehicle is in California. Is that right? You could, and we don't think that's right. We think that California law should apply to all drivers while they're in California. Okay. So now California is going to regulate the drivers, even if they're based elsewhere. I thought that the California Supreme Court dealt with that question in Oman. I mean, wasn't that covered by the collective bargaining agreement in exhaustive detail with four different variations on how we pay flight attendants? And then we pick the one that's most beneficial to the flight attendant. If your honor is referring to Oman's results regarding conflicts of law, I believe. I'm not sure I understand how Oman covers. I guess what I'm trying to tease out here is applying your argument. I'm trying to figure out what the real world effect is going to be on what USX has to pay drivers if there are differences in the residence of the drivers for work that's performed in California when they're driving in tandem. I mean, I could see us ending up in a situation where, to get back to Judge Hurwitz's initial question, we're paying driver one more or less than driver two, if we apply your argument. Which I think creates real chaos in the trucking industry. Regarding the, just going back to the team driver situation, the team drivers are already making mileage pay for the time they spend in the sleeper berth, so it isn't actually non-productive time under USX's current system. You want us to rewrite the contract so that it incorporates time spent standing around at the loading dock if there's a delay in the loading or unloading of the cargo? You would call that non-productive time, right? It's not rewriting the contract. It's applying the plain language of section 226.2. It's a different compensation scheme than what the party's originally intended, is it not? And that's why I'm having a hard time squaring your argument. Counsel, you're breaking up. And so is the court. Am I back? Yes. You're back. Something that perplexes me about this, because there's a contract here that denominates the miles as the piece rate and includes the sleeping, if we were to agree with you and say, well, this other non-productive time should be compensated some other way, wouldn't, couldn't that result in something that's detrimental to the employees? Because maybe the company would, USX would pay some other fee for the so-called non-productive time, but then lower the contract rate so that the overall amount it was paying was still the same. So that could potentially be true in any piece rate system. And that is a potential effect of section 226.2, but the legislature has already considered those pros and cons of the pros of piece rate systems, the cons of piece rate systems. And it shows this compromise where it allows piece rate, but with the relatively modest requirement that employers separately compensate non-productive time at no less than minimum wage. And it, the statute prevents employers from shifting all of the business risk to workers. And so it's not just about paying, it's not always just about paying employees more. It's about accounting for that risk that's involved in the piece rate system where they might be delayed for hours at facilities. So am I right in understanding what you said before is that you're not arguing that there is, that the statute applies to time spent sleeping into births for team drivers? That is not non-productive time. And our, our allegation as to that time is just that it's paid below minimum wage because the mileage rate is so low and because USX doesn't consider it. Right. But that, that's not an issue in front of us on this interlocutory. Correct. Correct. So you're only claiming non-productive time for time not spent in the moving vehicle. Is that a fair way to put it? Correct. All right. Thank you, counsel. Let's hear from US Express, Mr. Hanson. May it please the court. This is James Hanson on behalf of the defendants, US Express Enterprises and US Express. Your Honor, this, we're asking the court to affirm the district court decision. The district court correctly decided that the undisputed evidence showed that USX and its drivers agreed on a compensation system that to get the load delivered. The court also correctly decided that when drivers are in the sleeper birth, the team drivers, when they're in the sleeper birth for the time that they spend in there, that their choice to become team drivers, that that is not compensable work time because they were the ones that made the decision for the restriction to take their sleeper, to take their breaks in the sleeper birth. So, Mr. Hanson, your colleague says we're not claiming that time spent in the sleeper birth is compensable time. Do we have to address that issue? The court below did, and they've addressed it in their brief. Yeah, but I think they did address it in their brief, but I now hear him saying that's not our position. And I also question whether we have jurisdiction over it since the 54B certification could be read to be limited just to the first issue. Could it not? I think certainly it could, yes. I think their confession that it's not compensable work time is something that we accept. So tell me how we know what the agreement between the employee and the employer is in this case. And I know what you've cited in your brief, but in many cases, we looked at the collective bargaining agreement and it says, we agree this is the scope of work, if you will. Is your argument here, is it based entirely on the employee manual? It's not just the employee manual. What you're doing is construing an agreement that is made every day in workplaces with at-will employees. Well, but how does the employee agree to that? Just by driving the car with a truck? Right. As the at-will employment cases in California say is that once the employer presents the employee with the terms and conditions of employment, once the employee begins working under those terms and conditions, he has accepted those. I'm still asking how the employer presented the employee with the terms and conditions here. I see it in the employer handbook. Is there any other way they presented them with the terms and conditions of employment? Yes. What we do is we go over in an orientation and explain how we're going to pay. The way we pay is common in the trucking industry. Truck drivers understand that when they receive a particular mileage rate, that pay determines the amount they're going to get for the load. It doesn't define the activities for which they are paid. When USX gives a load to a driver, when they dispatch the load, they provide them with all the information, where they start, where they end, how many miles it's going to be, that they're going to be paid for associated with that load. Then they get an itemized weight statement that lays out the load that they delivered and the amount that was paid for that load. Drivers are not paid for actual miles driven. It's interesting to me that the plaintiff concedes that they're not paid for actual mile, therefore, they are only paid for driving. That would be true if you were paying for actual miles, but that's not how the company pays. I think you hit on it in some of the questions that were asked. In the team driver situation, Ayala got paid for all of the miles associated with the load, even though he didn't drive all the miles associated with the load. The work that was taken to complete the delivery of the load was split between the two of them. One of them may have spent more time doing the loading and unloading. One of them may have spent more time doing fueling along the way. Those activities, the non-driving activities are not necessarily the same between drivers in a team driver situation, but they get paid for all of the miles. Associated with that load. So the answer to Judge Hurwitz's $100 hypothetical is each driver gets $50. Each driver gets $50. That's correct. If that's what the load paid, yes. Regardless of how much he may have contributed to the work that has to be done to move the cargo from point A to point B. Well, we think that there's not a measurement of the work that they do. If you consider miles driven to only be the work that's done. No, no, no. I was teeing off your representation about one driver may have spent more time refueling. Maybe the other driver spent more time, I don't know, communicating with the dispatcher with regard to the logistics of delivering the load. I don't know what they do in the cab, but I assume they're doing something besides just driving and sleeping. Actually, they only drive because they're prohibited from using devices in the truck because of the safety issues. The DOT prohibits that. But they end up, in the course of delivering the load, they have to receive the dispatch. They have to determine whether they can make the delivery and the appointment times for the pickup and the delivery of the load. They have to decide where they're going to stop along the way for their fueling. They then do the fueling. They have to deal with the customer, both at the pickup location as well as at the delivery location, getting the paperwork signed and turning that paperwork into the company. So there's a lot more activities. And Ayala said that all of those activities were required to complete the delivery. In other words, a load cannot be delivered unless a driver does all of those activities that they now complain are unpaid, all of the non-driving activities. So I want to understand your position on this. And I'm not sure I understood it fully until now. What you're saying is that we really pay a fixed sum for delivering a load. And we determine that fixed sum by the number of miles between point A and point B. We don't determine it by the number of miles driven. It's just the way we come up with the fixed sum for this piecework. Is that your position? That is correct. It can be considered a fixed fee because the miles are given to the driver at the time. In advance, in advance. Even if he ends up driving 10 miles more, he still only gets the fixed fee based on the calculation of those miles. He doesn't get more because he happens to drive more actual miles. Or even if you miscalculated the miles for some reason, you tell him in advance. Okay. Now, my question is, and it leads back to the question your colleague raised. If we affirm the district court, are we allowing manipulation of the California system? In other words, California as a matter of public policy says, you ought to be compensated for nonproductive time on the job. And we can run through hypotheticals all day long, but isn't it in the end, aren't we really allowing the employer to evade that concern that the legislature had? I think Oman dealt with that question. The question becomes, did the employer borrow from the pay that was given for the compensation that was paid for the piece that was paid in order to pay for something that is unrelated to the delivery of the load? And that's why it's important in this case that in every instance in which they complained or what they're complaining they were unpaid for on the non-driving time are all things that are required to get the load delivered. Ayala himself admits, I could not have delivered the load if I didn't do each one of these things. Well, how does having to stand by for delays or traffic accidents or things that happen while they're delivering the load where they're not making progress and they're driving? That is, when they're not driving, I mean, a driver who has stopped in traffic is still driving. Well, suppose they're having a delay in refueling or something like that or being weighed. All of that is included within the pay they receive for the delivery of the load. We have circumstances where when the delay exceeds two hours at a shipper or receiver of the goods that they can receive additional compensation and they just notify the company of the delay. So there are instances where if it exceeds a certain amount of time, we will pay extra in those circumstances. They communicate that with their dispatch, with the driver managers, as to when they encounter those situations that prohibit them or in some way delay their ability to deliver the load. And is that message transmitted by the non-driving driver from the passenger seat of the cab? No, that would not be, because then the driver would have to log as on-duty in order to communicate that message. Well, I'm a little confused by what you said earlier. Are you saying that USX doesn't compensate for anything that the non-driving partner does, even if the non-driving partner is sitting in the passenger seat? The non-driving partner can only sit in the passenger seat for a total of two hours in the 10-hour break time. And what does he permit? Does he do anything that advances the delivery of the cargo? Does he, I don't know, do they have a computer terminal that he can send email messages back to the dispatcher? They have an on-board computer, but the person who is logged into it is the driver of the vehicle, because it's recording electronically his hours driving and on-duty not driving. There's four duty statuses that are covered by the on-board recorder. So how do they communicate with the home office if there's more than a two-hour delay, for example, at the receiver dock? See, in that circumstance, the person who is on duty is logged in as on-duty not driving. And that person would be entitled to use the on-board computer to send a message to dispatch that they've been delayed at the shipper or receiver. And they can send the message that the delay is more than two hours. So in that case, they're not driving when they're sending the message. OK. I want to return to Oman for a second, which was really about minimum wage. What it said was you can't define the tasks in a way that results in evading the minimum wage laws. Right, yeah. Your colleague said you had that kind of claim in this case, but that's not in front of us on this interlocutory appeal, is it? It is not. I mean, Oman said, did you contractually pay what you agreed to pay? And then number two, did that pay meet or exceed the minimum wage? There's no allegation that U.S. Express did not pay the minimum wage for all hours worked while delivering a load. But I take it the allegation may be a little bit self-contradictory, but the argument is, well, if you add up all my time on this, the amount of time I spent and you look at what you're paying me, I'm not getting minimum wage for some of the hours. I don't know. But I just want to make sure that's not in front of us. I didn't understand it to be in front of us. No, that is not in front of the court in this. Because what we pay on, if you look at the on-duty driving and on-duty not driving time, all of the pay exceeds the minimum wage for that time. So if it takes 10 hours for the drivers to complete the trip, whether their time spent on it is, in the view of your opponent, productive or non-productive, for each of those hours, they get more than the minimum wage. That is correct. There is no allegation that they have not been paid the minimum wage. And there's also no allegation that we have not paid them for what we agreed to pay them, and that is to deliver loads. They have, in fact, been paid for all of the loads that they accepted from the company to deliver, and that's not an issue in the case. And it's just, in this case, the formula cannot determine what is being paid for. That's part of OMON. It's not the formula that determines what's paid for. It's what's the mutual understanding between the employer and the employee. So the question we're to decide is whether Section 226.2 allows an employer to define the piece. But it's still before the district court whether you're having, assuming you did enter into a contract defining the piece, whether the amount of compensation that you're paying for the truck drivers get actually satisfies the minimum wage in California. That is correct. There is no definition of the piece in the labor code. All it does is say that you can pay by the piece, and the DLSC manual says that you can define the piece, and OMON said it's up to the agreement of the understanding between the and we present in these. So I guess I'm confused by the briefing or what the district court said, because I thought the sleeper argument was the argument that pertained to the whether or not the drivers were getting the minimum wage in California. No, the plaintiff in the underlying case said that the sleeper birth time, that in and of itself, because the drivers couldn't leave the sleeper birth of a moving truck, that that should be compensable time. And the district court said no, based on Taco Bell, because Taco Bell said if you give the employees a benefit, and they accept the benefit, and the restraint is put because of their choice, not because of the employer's choice, then that is not compensable work time. And the cases the plaintiff cites are all where the employer made the choice that affected the employee, rather than the employee accepting a benefit, and the restriction coming as a result of the employee's decision, not the employer's. U.S. did nothing to interfere with their sleeper birth time. So let me ask this question differently. If we were to agree with the district court's reading of the statute, we don't have to reach sleeper birth time on this appeal, right? In other words, the district court said, in effect, gee, pre-2013, I'm not sure what the agreement was. And I need a factual record. I need a factual record, and it may well be that sleeper birth time fell out of the agreement during that period. But the district court held that sleeper, whatever, all time spent delivering the load from point A to point B was covered under the piecework rate here. If we agree with that, we don't need to worry about sleeper birth time, do we? Here's how I think the court needs to look at this. Number one, the plaintiff admitted that his pay was consistent during the entire time of his employment, pre-2013, as well as 2013 and afterwards. I'm starting off with the notion that I'm not going to address in this case pre-2013 issues because they weren't certified to us. And the stuff that was actually certified is complicated enough. So my question is, if we accept the district court's reading of the statute and the statutory scheme, sleeper birth time is really not relevant to our analysis, is it? If we don't accept it, it might well be it. But if we accept the district court's legal analysis, we don't need to worry about sleeper birth time, do we? I think the court must decide the sleeper birth issue because the court, the district court, found that that sleeper birth time was not compensable work time. Oh, let me put it differently. The district court doesn't care what the people are doing during the trip, right? I don't know if I'd go that far. The post-2013 trip, you're being paid a set rate for delivering from point A to point B. And whether you're the driver or the sleeper or the nose picker or whatever, we just don't care under the district court's analysis. Is that correct? That would be correct. Okay. It doesn't matter whether it's driving or non-driving. Okay. I just wanted to make sure I understood. Yeah. And the only issue the sleeper birth brings up is, is any of the time in the sleeper birth compensable work time? And the district court said, based on Taco Bell, that is not on duty work. That is not time that should be compensable under California law. And the court- All right. Thank you, counsel. You're well over your time. And Mr. Wendell, I'll give you a couple minutes maybe to clarify some of these issues, particularly what is before us and what isn't before us. Thank you, your honor. For the second issue, what we're seeking is a judgment that time spent riding in the moving truck is compensable work time. Because even if mileage pay covers all work time, it has to exceed the minimum wage in order to determine whether the compensation met the minimum wage. But you agree as to that issue that was not certified to us? It was not certified. The district court certified the order based on the other issue. However, when a district court certified- I understand we have the ability to reach it. I just want to make sure we have an understanding that we're not required to reach it. Okay. Yes. And you can still litigate that issue on remand, can you not? Because there's a fact question concerning the degree of control over which the employer may or may not be exerting for sleeper birth time. Okay. But what the district court said was that being confined to a moving truck is not sufficient to mean that the employee is under the employer's control. And that is incorrect under Marillion and other cases. The district court just relied on this idea that the team drivers chose to be team drivers, which would mean that any employee who chooses their job would not be guaranteed the minimum wage for all hours worked. Because according to the district court, they chose to spend- So for example, in Mendiola versus CPS security systems, the workers there were security guards. And there was a group of security guards who had on-call shifts. And another group that had the exact same job except for no on-call shifts. And the guards who had on-call shifts were required to stay on site during their on-call shifts. And in that case, the court didn't care the fact that whether the on-call guards could have switched into a position that didn't have on-call shifts. And so this really, it's a very- An awful lot of California labor law, because workers don't waive their right to receive minimum wage for all hours worked by choosing one job position over another. Well, I- All right. Okay, I'm done. Thank you, counsel. Ayala versus U.S. Express Enterprises will be submitted. And we'll take up Decker Coal Company versus Peringer and Director, Office of Workers' Compensation Programs. Thank you.
judges: Wardlaw, Tallman, Hurwitz